SHIRO T'ANGELO WELLS,

                Plaintiff,

v.                                                       Case No. 19-cv-0997-bhl

KILOLO KIJAKAZI,[1] Acting Commissioner of
Social Security Administration,

                Defendant.

## DECISION AND ORDER

      Shiro T'Angelo Wells seeks review of a March 6, 2019 administrative law judge decision denying his claim for disability insurance benefits under the Social Security Act. For the reasons set forth below, the decision is affirmed.

## BACKGROUND

      On September 30, 2014, Wells filed a claim for social security disability benefits based on a mental disorder variously described as "bipolar disorder" and "history of oppositional defiant disorder." Wells had previously received supplemental security income as a child and, after turning eighteen, sought to continue receiving benefits by having his claim redetermined. The Social Security Administration (SSA) first denied Wells' claim when he failed to attend a medical examination, concluding that it lacked sufficient medical information to find him disabled. R. 484.

      Wells requested reconsideration, and the SSA referred him to Jeffrey Polczinski, Psy.D., for a consultative psychological evaluation. Dr. Polczinski examined the plaintiff on May 4, 2015 and filed a written report documenting the evaluation. R. 722-28. Dr. Beth Jennings, Ph.D., a nonexamining state-agency psychological consultant, also provided an assessment on May 19, 2015. R. 729-42. Thereafter, on June 18, 2015, the SSA again determined that Wells was not disabled, this time on the merits, and rejected his claim for benefits. R. 503.

---

[1] Kilolo Kijakazi, the current Acting Commissioner of the Social Security Administration, is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. §405(g).

Wells then appealed the denial of his claim to an ALJ and an initial hearing was set for April 5, 2017. R. 504, 523. Wells failed to appear at this appointment and the ALJ rejected his appeal. R. 550-51. Wells requested review of the ALJ's initial decision and, on November 6, 2017, the Appeals Council remanded the case back to the ALJ. R. 481, 557-58, 562. On July 13, 2018, the ALJ held a second hearing. R. 808-61. At the July 13, 2018 hearing, Wells appeared without counsel, but accompanied by his mother, Angela Robertson-Wells, who testified contemporaneously with Wells.[2] Robertson-Wells interjected additional details and affirmed Wells' testimony throughout the ALJ's questioning.

The ALJ also heard testimony from Dr. Jacquelyn E. Wenkman, Ph.D., an impartial vocational expert (VE). The ALJ asked Dr. Wenkman whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. Dr. Wenkman testified that, given all of those factors, the individual would be able to perform the requirements of representative occupations such as Kitchen Helper, Laundry Worker, and Assembler. R. 853-57.

At the close of the hearing, the ALJ indicated that prior to rendering a decision, he would likely send Wells for an updated psychological examination. R. 857. The state Disability Determination Bureau then referred Wells for a second consultative psychological evaluation with Rebecca Flegner, Psy.D. Dr. Flegner examined Wells on December 17, 2018 and filed a written report documenting the evaluation. R. 800-07.

The ALJ issued an unfavorable decision on March 6, 2019. The ALJ performed the five-step sequential evaluation under 20 C.F.R. §416.920(a) to determine whether Wells was disabled. Because Wells was seeking a redetermination of disability upon turning 18, the ALJ skipped step one consistent with the applicable regulations.[3] At step two, the ALJ found that Wells had a severe impairment that resulted in more than a minimal limitation in functioning, specifically a mental disorder variously diagnosed as bipolar disorder and history of oppositional defiant disorder. R. 21. At step three, the ALJ concluded that the evidence did not support a finding that the severity of any of Wells' impairments, either singly or in combination, was sufficient to meet any of the listed impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1 §12.00. R. 21-22.

---

[2] Wells obtained counsel in March 2020, after this appeal was filed.
[3] Step one – determining whether the claimant is engaged in substantial gainful activity – is not used for redetermining disability at age 18. 20 C.F.R. §416.987(b). The plaintiff has never engaged in substantial gainful activity.

The ALJ determined Wells retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: He could understand, remember, and carry out no more than simple instructions; he could occasionally make decisions; he could manage occasional changes in the work setting; and he could have no more than occasional contact with the general public. R. 22-25. With these limitations, the ALJ found Wells could perform work existing in significant numbers in the national economy. R. 26, 853-55. The ALJ ultimately concluded that Wells' disability ended on December 1, 2014, and he had not become disabled again since that date.[4] R. 18.

Wells appealed the ALJ's decision to the Appeals Council, which denied Wells' request for review on June 12, 2019. Wells filed this appeal on July 12, 2019.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id*. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotations omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

---

[4] Based on the application for child's insurance benefits filed on September 30, 2014, Wells was not disabled as defined in section 223(d) of the Social Security Act prior to October 6, 2018, the date he attained age 22. R. 27. Based upon a redetermination of Wells' continuing eligibility for SSI upon attaining age 18 under section 1614(a)(3)(H) of the Social Security Act, Wells' disability ended on December 1, 2014, and he had not become disabled again since that date. *Id*.

# ANALYSIS

Wells makes four arguments for reversal of the ALJ's decision. First, Wells argues the ALJ erred in evaluating the medical and opinion evidence. Wells claims the ALJ adopted the opinions of Drs. Poczinski and Flegner, despite their lack of consideration of Wells' complete clinical record. Wells contends the medical evidence, including the treatment notes of APNP Kenya Robertson, does not support the ALJ's conclusion that he can perform unskilled work. (ECF Nos. 21 at 16-18; 29 at 3-5.) Next, Wells argues the ALJ erred in evaluating his subjective symptoms, by failing to consider or address: (1) the reasons Wells lacked treatment; (2) Wells' inability to integrate, in any meaningful way, into society; and (3) the testimony of his mother, Angel Robertson-Wells. (ECF Nos. 21 at 18-22, 29 at 6-7.) Wells' third and fourth arguments relate to the ALJ's determination regarding the severity of his mental impairments. Wells argues the ALJ erred in evaluating his mental Residual Functional Capacity (RFC), specifically in evaluating Wells' moderate limitations in concentration, persistence, or pace. Finally, Wells argues the ALJ did not provide an explanation for his conclusion that the evidence failed to establish the presence of "paragraph C" criteria. (ECF Nos. 21 at 8-16; 29 at 8-13.) Because the record supports the ALJ's decision on each of these challenges, Wells' appeal must be rejected.

**I.      The ALJ's Decision is Supported by Objective Medical and Opinion Evidence.**

Wells' principal argument on appeal is that the ALJ improperly evaluated the medical and opinion evidence. This evidence includes three medication management appointments attended by Wells and two consultative evaluations ordered by the Agency.[5] R. 23-25.

An ALJ must decide what weight should be given a medical opinion by considering, to the extent applicable, specific regulatory factors, including (1) the length, nature, and extent of the medical treatment relationship; (2) the explanatory support for the opinion; (3) the medical opinion's consistency with other evidence; and (4) any specialization of the medical source. 20 C.F.R. §404.1527(c).

---

[5] Wells argues that the ALJ lacked a complete picture of Wells' disability because he failed to order an IQ test. At the close of the hearing, however, the ALJ merely stated, "I'm *probably* going to send him for a psychological examination *with IQ testing*." R. 857 (emphasis added). He then scheduled Wells for the post-hearing consultative examination with Dr. Flegner. The ALJ did not abuse his discretion in his decision not to order an IQ test. *See Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012) (noting "the need for additional tests or examinations will normally involve a question of judgment, and we generally defer to the ALJ's determination whether the record before her has been adequately developed").

In assessing Well's mental impairments, the ALJ gave "great weight" to the opinion of Dr. Polczinski, Psy.D., as the only reliable objective clinical evaluation of Wells' mental health status. R. 25. Wells, accompanied by his mother, saw Dr. Polczinski for a mental status evaluation on May 4, 2015. Dr. Polczinski ruled out the diagnosis of oppositional defiant disorder and concluded that Wells was able to understand simple directions, had adequate memory, had adequate attention and concentration for routine tasks, and had adequate social judgment to relate appropriately to co-workers and supervisors. R. 726. He further noted that Wells had mild impairment in his ability to manage stress and changes in the workplace. *Id*. The ALJ noted that Dr. Polczinski's observations and conclusions were not inconsistent with Wells' hearing presentation and supported no more than mild to moderate mental health limitations. R. 25.

Wells argues Dr. Polzcinski lacked a full clinical picture of his disability and his ability to function. Dr. Polcinski's Psychological Report, however, referenced Wells' 2005 psychological evaluation,[6] which documented issues with Wells' classroom placement, intellectual ability, diagnoses, and parent-child relational problems. R. 722-23. In his report, Dr. Polczinski described Robertson-Wells as a "vague historian" of her son's psychiatric condition and treatment. He nevertheless took into consideration both her and her son's accounts of his behavioral difficulties while in school. *Id*. Dr. Polczinski also considered their accounts of Wells' recent activities and functioning abilities. R. 723-24. Considering that Dr. Polczinski examined Wells, provided supporting explanations for his opinions, specialized in clinical psychology, and his opinion was consistent with the record as a whole, 20 C.F.R. §404.1527(c), the ALJ appropriately afforded great weight to his opinion.

The ALJ also considered the records of Kenya Robertson, APNP, whom Wells saw in early 2018. R. 23, 784-99. Wells first saw APNP Robertson on January 16, 2018, to establish care for mood disorder, difficulty concentrating, anger, and insomnia. R. 784. APNP Robertson noted Wells' major symptoms as depressed mood, impulsivity, racing thoughts, decreased need for sleep, excessive energy, increased irritability, suspiciousness, and hallucinations, R. 785, and prescribed Seroquel. R. 790. At a February 6, 2018 follow-up visit, Wells reported continued depression, hallucinations, irritability, and impulsiveness. R. 793. The same medication was continued. At

---

[6] Wells argues the 2005 exam does not appear to be part of the file, however the record does include notes and a formal psychological assessment from David R DuBord, Psy.D., who conducted neuropsychological consultations with Wells on June 29, July 2, and July 18, 2005. R. 275-98.

the third and final examination on March 5, 2018, Wells reported to APNP Robertson that he was taking the medications as prescribed and, while he continued to experience hallucinations, impulsiveness, and paranoia, he reported his medication was working. R. 796-97. Wells' brother, Nick, who accompanied Wells to the exam, reported that he noticed a reduction in the frequency of Wells' pacing at night and that Wells had been less aggressive and moody. R. 797. APNP Robertson prescribed an additional medication, Sertraline, increased his Seroquel dosage, and scheduled another follow-up appointment. R. 798-99. Wells, however, did not continue his care with APNP Robertson. While Wells argues the record does not show that he was "improving" with medication, the record supports the ALJ's finding that Wells "did report some improvement in his symptoms." R. 23.

Recognizing the minimal evidence regarding Wells' recent psychological functioning, the ALJ made efforts to further develop the record and scheduled Wells for a post-hearing consultative examination, which was conducted in December 2018 by Rebecca Flegner, Psy.D. R. 24-25, 800-07, 857. Dr. Flegner reviewed Dr. Polczinski's 2015 report and interviewed Wells and his mother. Wells' mother informed Dr. Flegner about Wells' previous diagnoses related to his ADHD, learning disability, and anti-social behavior; his history of disruptive behavior in school; his recent mental health issues; his treatment history with APNP Robertson; and his lack of compliance with taking his prescribed medication. Ultimately, however, Dr. Flegner found her own examination to be an "invalid representation of his functioning" due to his "volitional attempt at malingering." R. 806. Dr. Flegner made the following observations at the evaluation:

> [Wells] looks purposely dressed in dirty, tattered clothing. He has a torn sweater, ripped and stained pants. He is restless during the interview. He takes his shoes off, opens cabinet doors, he put[s] the Kleenex in his sweater. He did not establish eye contact. He mumbles to himself frequently. His attitude is uncooperative. His presentation appears to be a volitional exaggeration of his symptoms. It is difficult to interview him due to this presentation. Thought content appears goal-directed. He appears to present as if he is responding to hallucinations; however, evaluator believes this is feigned. His speech is mumbling and incoherent. He answered most questions in third person noting "we" instead of I. It is difficult to assess vegetative symptoms due to Shiro's poor engagement and his mother's vague history.

R. 805.

The ALJ found Dr. Flegner's assessment not particularly helpful in formulating a residual functional capacity. He did, nevertheless, afford her assessment some weight with regard to information provided by Wells' mother concerning his lack of compliance with medications. R.

25. Wells argues the ALJ failed to consider that Dr. Flegner lacked any of the evidence used to previously determine his disability or records related to his updated mental health treatment. The ALJ, however, drew no conclusion based upon Dr. Flegner's assessment that Wells was malingering and afforded her opinion only very limited weight.

## II. The ALJ's Evaluation of Plaintiff's Subjective Symptoms Is Supported by the Record.

Wells next contends that the ALJ erred in evaluating his subjective symptoms. He points out that the ALJ simply referenced his activities in the context of the 2015 consultative evaluation. Wells notes the ALJ is not a medical professional, and as such, his opinion that Wells did not appear anxious at the hearing is not an appropriate consideration.

Contrary to Wells' assertions, the record shows that the ALJ did not limit his analysis to the evidence unfavorable to Wells. The ALJ's decision addressed Wells' testimony that he did not like to be in crowded places, angered easily, and did not have much social interaction. R. 21. The ALJ accepted Wells' allegations to a significant degree, finding he required simple instructions and limiting him to occasional decision-making, occasional changes in the work setting, and occasional interaction with the public. R. 22. The Seventh Circuit has confirmed that an ALJ's findings regarding a claimant's subjective complaints are entitled to great deference. *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) ("We do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"). This Court will not substitute its judgment by deciding issues of credibility related to the ALJ's finding that Wells was not as limited as alleged. R 24-25.

Wells also believes the ALJ erred by not weighing the testimony of his mother, Angela Robertson-Wells, which provided evidence contrary to the ALJ's conclusion. During the hearing Robertson-Wells testified contemporaneously with Wells, interjecting additional details, and affirming his testimony throughout. R. 808-61. So, while parsing out her testimony from that of Wells may have presented a challenge, the ALJ referred in his decision to both Robertson-Wells' testimony during the hearing that her son needed reminders and supervision, and his lack of mental health treatment, R. 22, 24; as well as her statements made to Dr. Flegner regarding his treatment with APNP Robertson, R. 24. The record shows the ALJ did not ignore the testimony of Robertson-Wells, but rather considered it in light of all of the other evidence before him.

### III. The Record also Supports the ALJ's Evaluation of Plaintiff's Mental Residual Functional Capacity.

Wells third challenge relates to the ALJ's determination regarding Wells' mental impairments. Wells argues the ALJ erred in evaluating his Residual Functional Capacity (RFC) in relation to the third "paragraph B" criteria: moderate limitations in concentration, persistence, or pace. Wells claims the ALJ limited Wells to "the basic mental demands of unskilled work," meaning "understanding, remembering, and carrying out simple instructions." However, according to Wells, the record does not support his ability to follow simple instructions on a sustained basis. Wells contends his updated mental health treatment with APNP Robertson reflects problems with concentration, a disorganized thought process, and limited insight and judgment. R. 785. Furthermore, he asserts his evaluation with Dr. Flegner reflected poor calculations, memory, and fund of knowledge. R. 805.

The ALJ concluded that, with regard to concentrating, persisting, or maintaining pace, Wells had not more than moderate limitation. R. 21. Meaning his abilities to independently, appropriately, and effectively focus attention on work activities and stay on task, on a sustained basis, were fair. 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§12.00E3, 12.00F2c. The ALJ considered Wells' appointments with Kenya Robertson, APNP, for medication management. The evidence showed that Wells saw her on only three occasions between January and March 2018 and that he had been inconsistent with taking medication. R. 23-25, 784-99. The ALJ also considered and found no meaningful information regarding Wells' functioning in the report of Rebecca Flegner, Psy.D., given that she assessed him as malingering, R. 25, 806. Thus, contrary to Wells' assertions, the ALJ considered the evidence favored by Wells but found the conclusions of Dr. Polczinski more compelling. This Court will not reweigh evidence or substitute its judgment for the ALJ's. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

Wells also argues the case should be remanded for inclusion of all of his limitations in the RFC. Wells points out that his problems dealing with stress are not limited to when he is in a crowd or with other people; rather his mood and impairments appear largely based on the day, according to his mother and as reflected by two consultative evaluations. R. 664-72, 722, 805. His mother reported that he had a short attention span, he was not ready to drive, and could not handle money on his own. R. 664-72. Updated mental health treatment reflects problems with concentration, a disorganized thought process, and limited insight and judgment. R. 790-91, 793-

94, 797-98. Wells states he was clearly having difficulty answering the ALJ's questions during the hearing, with the ALJ continually deferring to Wells' mother for responses, R. 818-52; his mother explained he was not able to obtain his GED, R. 819; and the most recent consultative evaluation with Dr. Flegner reflected poor calculations, memory, and fund of knowledge, R. 805.

There is no requirement that an ALJ incorporate into the RFC every alleged limitation in the record. Instead, an ALJ is under a more general obligation to include all limitations supported by medical evidence in the record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The ALJ did not disregard Wells' statements regarding the intensity, persistence, and limiting effect of his symptoms; he simply reasoned the statements were undermined by Wells' limited treatment and suspected malingering. R. 24-25. Wells incorrectly argues that the ALJ failed to consider why he lacked treatment. The ALJ did ask about his lack of treatment prior to 2018, and Wells' mother responded that, although there had been a "discussion" regarding treatment, she could only "encourage" him to seek it. R. 828-29. The ALJ thus appropriately considered Wells' explanation for receiving limited treatment for his mental health disorders. *See* Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166-01 (March 16, 2016) (explaining "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record").

### IV. The ALJ Properly Supported and Explained His Evaluation of Paragraph C Criteria.

Wells final challenge also relates to the ALJ's determination regarding Wells' mental impairments. Wells contends the ALJ did not provide an explanation for his conclusion that the evidence failed to establish the presence of "paragraph C" criteria. To meet the "paragraph C" criteria of a claimant's chronic affective disorder must be "serious and persistent" – that is, there must be a medically documented history of the existence of the disorder for a period of at least 2 years. The evidence must also show that (1) the claimant relied, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support, or a highly structured setting, to diminish the symptoms and signs of his mental disorder and (2) despite the claimant's diminished symptoms and signs, the claimant has achieved only marginal adjustment. 20 C.F.R., Pt. 404, Subpt. P, App. 1 §12.00G.

Wells argues there is no evidence that he can perform simple activities independently, appropriately, effectively, and on a sustained basis. He has not obtained a GED, has never worked, has problems with hygiene and cooking, does not drive, cannot handle money, and has poor impulse control and judgment. He also receives help from family members who monitor his daily activities and help him to function.

Despite Wells' limitations, the ALJ's conclusion that the evidence failed to establish the presence of "paragraph C" criteria is reasonable. Wells points to no objective evidence in the record indicative of marginal adjustment, which according to the regulations:

> means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R., pt. 404, subpt. P, app. 1 §12.00G2c.

The ALJ's determination that the "paragraph C" criteria were not satisfied is summarized in three paragraphs. *See* R. 22. But, reading the decision as a whole, the ALJ provided adequate rationale to support his conclusion. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("This analysis should not be discounted simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant."). While acknowledging that Wells clearly received assistance from his family, R. 22, the ALJ's conclusion, that none of the medical opinions suggested that his impairments were of listing-level severity, was supported by substantial evidence. R. 23-25. The ALJ acknowledged evidence to the contrary – primarily the statements of Wells and his mother regarding the intensity, persistence, and limiting effects of his alleged social withdrawal, anger problems, and learning disability – but found it was not entirely consistent with the medical evidence and other evidence on the record. R. 23-25. The ALJ noted that Wells had received little to no treatment, despite the claims at the hearing that he continued to see APNP Robertson for medication management. R. 25.

For all of the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and that Wells has not demonstrated that the ALJ committed reversible error.

## CONCLUSION

IT IS ORDERED that the Commissioner's decision is AFFIRMED. The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of September, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge